UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



CITY OF CHESAPEAKE, VIRGINIA,

      Plaintiff,

v.                               Civil Action No. 2:12cv195

CLEAR SKY CAR WASH, LLC,

      Defendant.

## OPINION AND ORDER

This matter is currently before the Court on several motions: (1) the City of Chesapeake's (Plaintiff's) Motion to Remand pursuant to 28 U.S.C. § 1447(c); (2) Clear Sky Car Wash's (Defendant's) Motion for Disbursement of Funds pursuant to Rule 71.1(j) of the Federal Rules of Civil Procedure; and (3) the City's subsequent Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motions have been fully briefed, a hearing was held May 30, 2012 on the Motion to Remand and Motion for Disbursement of Funds, and the Court has received and considered post-hearing briefs. Although the City of Chesapeake has filed a request for a hearing on the Motion to Dismiss, after examination of the briefs and the record, the Court has determined that a further hearing is unnecessary. For the reasons stated herein, the Court **GRANTS** the City's Motion to

Remand, **DENIES** the Motion for Disbursement of Funds, and **DENIES** the Motion to Dismiss.

## I.   FACTUAL AND PROCEDURAL HISTORY

On March 22, 2012, the City of Chesapeake ("the City") filed a Certificate of Take in the Circuit Court for the City of Chesapeake to gain a defeasible fee interest in the land owned by Clear Sky Car Wash ("Clear Sky"). The City instituted its quick-take action[1] as part of a federally funded highway initiative to widen Dominion Boulevard. ECF No. 1, Ex. 1. Along with the Certificate, the City deposited $2.15 million into an escrow account, as required by Va. Code § 25.1-305. Id. On April 11, 2012, Clear Sky filed in this Court a notice of removal of the state court Certificate of Take, thereby initiating the instant case. ECF No. 1. On April 18, 2012, Clear Sky filed an "Answer and Counterclaim" to this removed action. ECF No. 4. On April 20, 2012, Clear Sky filed a Motion for Disbursement of Funds in this removed case. ECF Nos. 5, 6.

On April 27, 2012, the City filed a Motion to Remand this removed action to the City of Chesapeake Circuit Court, alleging a lack of subject-matter jurisdiction. ECF Nos. 8, 9. Subsequently, on May 1, 2012, the City filed a response to Clear

---

[1]   The quick-take provisions of Va. Code §§ 25.1 and 33.1 allow the Department of Transportation and the City to enter a Certificate of Take prior to instituting formal condemnation proceedings. Clear Sky removed the present action before the City filed formal condemnation proceedings under Title 25.1.

Sky's Motion for Disbursement in the removed action, interposing no objections to the disbursement of funds by the Circuit Court of the City of Chesapeake, but arguing once again that this Court lacks jurisdiction and restating its arguments in favor of remand. ECF No. 11. On May 4, 2012, Clear Sky filed its reply in further support of its Motion for Disbursement of Funds, and on May 8, 2012 it filed its opposition to the Motion to Remand. ECF Nos. 13, 14.

Arguing that this Court had no jurisdiction, the City filed its Motion to Dismiss the counterclaim and memo in support on May 14, 2012, along with its reply in support of the Motion to Remand.  ECF Nos. 15, 16, 17.  On May 29, 2012, just one day before a scheduled hearing on the Motion, Clear Sky filed a Sur-Reply, arguing that the City improperly raised new arguments supporting its Motion to Remand in its reply brief.  ECF No. 20.

At the hearing held on May 30, 2012, regarding the Motion to Remand and the Motion for Disbursement of Funds, Clear Sky elaborated on its position that this Court has jurisdiction over the Certificate of Take pursuant to 42 U.S.C. § 4655, which requires that federal agencies receive assurances from their state partners confirming that the state acquisition agency will comply with the federal Uniform Relocation Assistance and Real Property Acquisitions Policies Act's ("URA") land acquisition policies.  During argument, Clear Sky appeared to concede that

3

there is no basis for this Court to exercise jurisdiction under 42 U.S.C. § 4651, which lays out the nine land acquisition policies to be followed by federal, and federally-funded, agencies.   Clear Sky further argued that exhaustion was not a predicate to exercise of federal review.   The Court granted Clear Sky leave to file a supplemental brief on the issue of exhaustion, and granted the City leave to file a supplemental brief in response to arguments in Clear Sky's Sur-Reply as well as to the exhaustion question.

On June 6, 2012, Clear Sky filed its supplemental brief and on June 20, 2012, the City filed its final supplemental brief. ECF Nos. 23, 28.

## II.  LEGAL STANDARD

Clear Sky removed this matter on the basis of this Court's "federal question" jurisdiction.  There is no allegation of diversity between the parties, and therefore the propriety of federal court jurisdiction rests solely upon 28 U.S.C. § 1331. In order for this Court to have "federal question" jurisdiction, the matter must "aris[e] under the constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  According to the United States Court of Appeals for the Fourth Circuit, "[t]here is no 'single, precise definition' of what it means for an action to 'arise under' federal law."  Verizon Md., Inc. v. Global Naps, Inc., 377 F.3d 355, 362 (4th Cir. 2004) (quoting

4

Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986)).
However,

> [t]he Supreme Court has recognized § 1331 jurisdiction in a
> variety of cases, such as (1) when a federal right or
> immunity forms an essential element of the plaintiff's
> claim; (2) when a plaintiff's right to relief depends upon
> the construction or application of federal law, and the
> federal nature of the claim rests upon a reasonable
> foundation; (3) when federal law creates the cause of
> action; and (4) when the plaintiff's right to relief
> necessarily depends on resolution of a substantial question
> of federal law.

Id. (internal citations and quotations omitted).

Clear Sky claims that the City's actions in acquiring its
property violated the land acquisition policies of the URA and
render its claims necessarily federal in nature.   In contrast,
the City argues that "federal question" jurisdiction is not
satisfied by alleged violations of the URA.

In remand cases, the party supporting removal bears the
burden of establishing federal jurisdiction.   Mulcahey v.
Columbia Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994)
(citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92
(1921)).   This Court is also mindful that removal statutes must
be strictly construed, and in cases where federal jurisdiction
is doubtful, remand is necessary.   Id.; see also Barbour v.
Int'l Union, 640 F.3d 599, 605 (4th Cir. 2011) ("Doubts about
the propriety of removal should be resolved in favor of
remanding the case to state courts.").

### III. DISCUSSION

Clear Sky alleges that during the "quick-take" proceeding, the City of Chesapeake violated several key provisions of the URA, specifically 42 U.S.C. §§ 4651 and 4655.  To determine whether this Court has jurisdiction, the Court must first decide whether the URA provides for federal review of violations of its land acquisition policies.

### A. The URA

The URA was created "in order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many federal programs, and to promote public confidence in federal land acquisition practices . . ."  42 U.S.C. § 4651.  The Act consists of two principal subchapters: Subchapter II, which determines the relocation assistance that shall be provided to displaced persons; and Subchapter III, which creates guidelines for federal agencies to apply in land acquisition proceedings.  The instant case, as it deals with the land acquisition inherent in a condemnation proceeding, relates only to Subchapter III. There are nine provisions by which federal agencies should be guided during such land acquisitions, all laid out in § 4651. Clear Sky has argued that the City violated a number of these

land acquisitions guidelines, but most specifically the "independent appraisal" guideline of 42 U.S.C. § 4651(2).

The URA specifies that "the provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." 42 U.S.C. § 4602. Therefore, the Act itself appears to state that § 4651 does not create a federal right of action on the part of landowners.

Clear Sky argues that even if federal review is unavailable under the land acquisition policies laid out in § 4651, jurisdiction still exists under 42 U.S.C. § 4655, which serves to incorporate § 4651 against the states. Section 4655 provides in relevant part that:

> [T]he head of a federal agency shall not approve. . . any program or project which will result in the acquisition of real property . . .unless he receives satisfactory assurances from such acquiring agency that - (1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition polices in section 4651 of this title.

42 U.S.C. § 4655.

Clear Sky's argument that jurisdiction exists under 42 U.S.C. § 4655 has its flaws as it would provide for a right of review of state agency action, while precluding review of federal agency action. See 42 U.S.C. § 4602. As one district court has stated, the court "fails to see how it lacks subject-

7

matter jurisdiction to review compliance with § 4651 under one section, but has . . . the requisite jurisdiction to review such compliance under another." Nelson v. Brinegar, 420 F. Supp. 975, 978 (E.D. Wis. 1976).

### B. Case Law

The Fourth Circuit Court of Appeals has not directly ruled on the issue of federal jurisdiction over URA violations.[2] However, in an unpublished decision, the Fourth Circuit did affirm a Western District of Virginia district court opinion holding that "district courts do not have jurisdiction to consider violations of the URA guidelines." Starr v. Shucet, 2005 U.S. Dist LEXIS 14146, *8 (W.D. Va. July 15, 2005)(unpublished)(collecting cases), aff'd 164 F. App'x 372

---

[2]  Clear Sky has claimed that the Fourth Circuit has decided the issue in a trio of cases: M.M. Crockin Co. v. Portsmouth Redev. and Housing Auth., 437 F.2d 784 (4th Cir. 1971); City of Columbia South Carolina v. Costle, 710 F.2d 1009 (4th Cir. 1983); and American Dry Cleaners and Laundry, Inc. v. U.S. Dep't of Transp., 722 F.2d 70 (4th Cir. 1983). However, only one of these cases dealt with land acquisition policies: M.M. Crockin was authored before the URA went into effect, and American Dry Cleaners relates only to the relocation assistance provisions of the URA. Though those cases may provide guidance on other provisions of the URA, they are uninstructive on the issue of federal jurisdiction over violations of the land acquisition policies. The Costle case, meanwhile, did not address the issue of an individual federal claim under the URA, but instead determined the narrow issue of whether a state necessarily had to give assurances under § 4655 as a predicate to receiving federal funds, and further, whether it was then obligated to comply with the provisions of § 4651. The purely legal nature of the inquiry, and the basic question of whether the URA even applied, made the issue a federal question.

(4th Cir. 2006) (per curiam affirmance "on the reasoning of the district court"). This proposition seems to also be supported by a number of other circuits which have ruled on the propriety of federal judicial review under the URA. A majority of circuits have determined that there is no federal jurisdiction under the land acquisition policies of § 4651, and claims alleging violations of that portion of the Act must be either remanded or dismissed. See, e.g., Delancey v. City of Austin, 570 F.3d 590, 592 (5th Cir. 2009) (holding that "the URA does not provide a private right of action for monetary damages" under § 4625); National R.R. Passenger Corp. v. Faber Enters., Inc., 931 F.2d 438, 443 (7th Cir. 1991) (concluding that the "reason that the URA cannot furnish a basis for reversal here is that we have no jurisdiction over a claim brought pursuant to the Act"); Consumers Power Co. v. Costle, 615 F.2d 1149, 1151 (6th Cir. 1980) (finding that § 4602 makes clear that plaintiffs' have "no rights or liability" under § 4651, and since § 4655 incorporates § 4651, no cause of action under federal law exists).

Yet the law is not so clearly stated in all of the Circuits. The Third Circuit Court of Appeals, for instance, speaking in broad language in an opinion dealing with relocation assistance, has stated that "a private cause of action [exists] against state officials for violations of the Housing Act and

the URA." Pietroniro v. Borough of Oceanport New Jersey, 764
F.2d 976, 980 (3rd Cir. 1985), cert. denied, 474 U.S. 1020
(1985). Pietroniro's broad language implies a federal right of
action under any provision; however, that case dealt only with
relocation assistance under § 4625 and not with the land
acquisition policies of § 4651. Id. Similarly, the Ninth
Circuit determined that § 4655 was reviewable at least to
determine whether a state agency had given sufficient assurances
to a federal agency before receiving federal funds. Lathan v.
Volpe, 455 F.2d 1111, 1125 (9th Cir. 1971).

Notwithstanding its 1985 Pietroniro decision, the Third
Circuit has more recently displayed some doubt about whether the
URA actually does provide for a private cause of action. See
Munoz v. City of Philadelphia, 346 F. App'x 766, 769 n.6 (3rd
Cir. 2009) (unpublished) (internal citations omitted)
(referencing a portion of the URA dealing with relocation
assistance and stating "we highly doubt . . . 42 U.S.C. §
4625(a) create[s] a private right"). Meanwhile, the majority of
the district courts that have addressed the issue have held that
there is no federal jurisdiction under the land acquisition
policies of the URA. See, e.g., New Orleans Aviation Board v. A
Portion of Square 2005, and Square 209, Kenner, Louisiana, 866
F. Supp. 969, 973-74 (E.D. La. 1994); Bunker Properties, Inc. v.
Kemp, 524 F. Supp. 109, 110-11 (D. Kan. 1981); Nelson v.

10

Brinegar, 420 F. Supp. 975, *5-6 (E.D. Wis. 1976); Barnhart v. Brinegar, 362 F. Supp. 464, 472 (W.D. Mo. 1973). Therefore, the weight of authority from the federal courts suggests that this Court does not possess jurisdiction to hear a claim when federal question jurisdiction is premised solely on violations of the land acquisition policies of the URA.

### C. Legislative History

Clear Sky also points to the URA's legislative history as support for its argument that a federal right of action exists under the URA. In particular, Clear Sky looks to the comments of Representative Ed Edmondson, who stated that "[the senate] makes it quite clear as to any eminent domain or condemnation case that there would be full judicial review afforded. I believe it is agreeable to both sides, insofar as the committee is concerned, to accept this amendment." 116 Cong. Rec. H42506 (daily ed. Dec. 18, 1970) (statement of Rep. Edmondson). Clear Sky claims that this statement demonstrates a legislative intent to create a path of judicial review for, at the very least, violations of § 4655.

Before examining the arguments of the parties addressing the legislative history of the URA, the Court notes that in this Circuit the district courts are required to first examine the plain language of the statute. Ignacio v. U.S., 674 F.3d 252, 255-56 (4th Cir. 2012); U.S. v. Hatcher, 560 F.3d 222, 226 (4th

11

Cir. 2009).  The <u>Hatcher</u> court observed that, "[a]s a general rule, 'when the terms of a statute are clear, its language is conclusive and courts are "not free to replace . . . [that clear language] with an unenacted legislative intent."'"  <u>Id.</u> (quoting <u>United States v. Morison</u>, 844 F.2d 1057, 1064 (4th Cir. 1988)(quoting <u>INS v. Cardoza-Fonseca</u>, 408 U.S. 421, 453 (1987))).  While there are two exceptionally rare exceptions to this rule, it is generally only where a court determines that a statutory provision is ambiguous that it looks to legislative history.  <u>Id.</u>  This Court finds that the plain language of the URA does not appear to be ambiguous on the issue of whether a federal right of action is created on the part of landowners. Section 4602 clearly states that "the provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation;"  Section 4651 is then directly incorporated against the states through Section 4655.  <u>See</u> 42 U.S.C. § 4602. However, for purposes of completeness, the Court will nonetheless examine the arguments of the parties addressing the URA's legislative history.

Federal courts that have looked to the legislative record have found that the actions of Congress constrain judicial review and prohibit it for the portion of the Act regulating land acquisition.  The most noted opinion is that of <u>Barnhart v.</u>

Brinegar, 362 F. Supp. 464 (W.D. Mo. 1973).[3]  The Barnhart
district court conducted an exhaustive review of the URA's
legislative history, including the language of Representative
Edmondson.  Viewing the record as a whole, the court concluded
that the congressman "was merely expressing the Senate end of
the House-Senate compromise, viz., judicial review of agency
decisions regarding relocation payments and assistance,
replacement housing, and title transfer and litigation expenses
was to be governed by the existing law, the Administrative
Procedure Act."  Id. at 472.  Following a complete review of the
legislative history, the Barnhart court found that "one
conclusion is irresistible - Congress intended section [4602] to
preclude judicial review of federal and state agency actions
under the real property acquisition practices of section [4651]
of the Act."  Id.  Finding such decisions to be well reasoned,
this Court is unpersuaded by Clear Sky's legislative history
argument.

---

[3]  The Fifth, Seventh, Eighth, and Eleventh Circuit Court of
Appeals have adopted the Barnhart analysis of the URA's
legislative history. See Ackerley Communications of Florida,
Inc. v. Henderson, 881 F.2d 990, 992 (11th Cir. 1989); United
States v. 320.0 Acres of Land, More or Less in Monroe County,
State of Fla., 605 F.2d 762, 823 (5th Cir. 1979); Roth v. U.S.
Dept. of Trans., 572 F.2d 183, 184 (8th Cir. 1978); Rhodes v.
City of Chicago for Use of Sch., 516 F.2d 1373, 1378 (7th Cir.
1975).

## D. <u>Gonzaga</u> and Federal Right of Action

This Court is further guided by the principles elucidated by the 2002 Supreme Court decision in <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273 (2002). In <u>Gonzaga</u>, the Supreme Court considered whether a federal right of action existed under 42 U.S.C. § 1983 for violations of the Family Educational Rights and Privacy Act ("FERPA"), and in doing so it explained the set of circumstances under which a federal statute gives rise to a private right of action. The Court examined a variety of federal funding provisions, and reiterated its position that "unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights," there is no basis for private enforcement. <u>Id.</u> at 280 (citing <u>Pennhurst State School and Hosp. v. Halderman</u>, 451 U.S. 1, 17 (1981)). Although the Court was analyzing a right to private action under § 1983, it acknowledged that "the initial inquiry – determining whether a statute confers any right at all – is no different from the initial inquiry in an implied right of action case." <u>Id.</u> at 285 (citing <u>California v. Sierra Club</u>, 451 U.S. 287, 294 (1981)). To determine whether Congress exhibited an unambiguous intent to create a private right of action via the FERPA provision, the Court considered three primary factors: (1) whether the Act included specific, rights-creating language; (2) whether the language was couched as having an individual or aggregate focus;

14

and (3) the audience to whom the language was directed, and the strength of that language. Id. at 290.

Only one federal Court of Appeals has applied the Gonzaga analysis to the provisions of the URA. See Delancey v. City of Austin, 570 F.3d 590, 592 (5th Cir. 2009). That court examined § 4625, which provides for advisory programs to displaced persons under the relocation assistance portion of the URA, and determined that there was no Congressional intent to create a right of action. Although the Delancey court was addressing a relocation assistance provision under the URA, it applied the Gonzaga analysis to the Act as a whole and concluded that the court lacked jurisdiction over the URA in its entirety. The Fifth Circuit found that the URA lacks rights-creating language, and is directed toward the head of the agency, rather than toward the individuals who were to receive the benefit of the URA provisions. Id. at 595. Therefore, the Fifth Circuit determined that under the Gonzaga test, Congress had not created an "unambiguous" federal right of action for violations of § 4625. Id.

The Delancey court's analysis appears analogous to an examination of the land acquisition portion of the URA at issue in this case. The language in § 4651 and § 4655 is similarly directed toward the federal agency, and not toward the individuals receiving the benefits of the land acquisition

15

policies.   Additionally,  the  land  acquisition  provisions  are
directed   to   the   aggregate.      In   other   words,   rather   than
identifying  any  specific  "person"  and  thereby  implying  an
individual  right  of  action,  the  provision  states  that  it  is
created  "in  order  to  encourage  and  expedite  the  acquisition  of
real  property."    42  U.S.C.  §  4651.    Furthermore,  the  statute
does  not  create  a  bright-line  standard  of  compliance:  instead,
it  directs  federal  agencies  to  distribute  funds  when  the  state
agency  agrees  to  "be  guided,  to  the  greatest  extent  practicable
under  State  law"  by  the  policies.    Id.    Furthermore,  instead  of
rights-creating  language,  there  is  rights-limiting  language  in  §
4602  which  "creates  no  rights  or  liabilities."    42  U.S.C.  §
4602.

Thus,  after  an  examination  of  the  case  law  in  various
circuits,  a  review  of  the  legislative  history,  and  a  reading  of
the  statute  with  the  guidance  of  Gonzaga,  it  appears  that  the
URA  does  not  provide  for  a  federal  right  of  action  under  the
land  acquisition  policies  of  §  4651,  either  by  federal  agencies
or  as  incorporated  against  the  states  via  §  4655.

### IV.  APPLICATION TO THIS CASE

The  initial  action  in  this  removed  case  was  the  filing  of  a
Certificate  of  Take,  pursuant  to  Va.  Code.  §§  25.1  and  33.1.
The  Certificate  of  Take,  which  is  clearly  tied  to  the
acquisition  of  defeasible  title  to  a  piece  of  property,  appears

16

to only implicate the land acquisition policies of the URA.
Therefore, as explained above, there is no federal right of
review pursuant to the provisions of § 4651.[4]

Because this action is based upon land acquisition, which
does not provide for federal review under the URA, this Court
does not have subject-matter jurisdiction. Therefore, the
Motion to Remand to the City of Chesapeake Circuit Court is
**GRANTED**.

### V.  MOTION FOR DISBURSEMENT OF FUNDS AND MOTION TO DISMISS

The Court's determinations above with respect to the City
of Chesapeake's Motion to Remand renders moot both Clear Sky's
Motion for Disbursement of Funds and the City's Motion to
Dismiss, and the Court will **DENY** them on that basis.

---

[4] Clear Sky also mentioned in its briefings that it had been
denied relocation benefits under Subchapter II of the Act. The
Court acknowledges that the language in Subchapter II is
mandatory and clearly outlines the beneficiaries of that portion
of the Act ("displaced person"). Therefore, there is an
argument to be made that federal question jurisdiction exists
under that portion of the Act. However, the Court need not
determine whether there is jurisdiction to consider violations
of the relocation assistance provisions of the URA, as those
claims arise only in briefings. The Certificate of Take, which
functions as the "complaint" in this action, does not implicate
relocation assistance. Under the well-pleaded complaint rule,
the complaint itself must establish that the action arises under
federal law. Franchise Tax Bd. of State of Cal. v. Constr.
Laborers Vacation Trust for S. California, 463 U.S. 1, 11
(1983).

## VI. REQUEST FOR ATTORNEY'S FEES

Finally, the City has requested attorney's fees in their motion to remand. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The test for requiring payment of attorney's fees "should turn on the reasonableness of the removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.").

Although there is a wealth of authority stating that the URA does not provide for federal review of its land acquisition policies, the Court acknowledges that there is contradictory case law. In light of the conflicting authority, and the absence of a clear decision by the Fourth Circuit Court of Appeals, the Court does not find that Clear Sky was objectively unreasonable in removing the action. Therefore, the request for attorney's fees is **DENIED**.

## VII. CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**, as this Court lacks subject-matter jurisdiction over a condemnation proceeding instituted in state

court without a necessary federal question or individual right
of action.  Furthermore, the Motion for Disbursement of Funds
and the Motion to Dismiss are both **DENIED** as moot, and this
matter is **REMANDED**.

The Clerk is **DIRECTED** to send a certified copy of this
Opinion and Order to the Clerk of the Circuit Court for the City
of Chesapeake, as well as a copy to counsel for the parties.

**IT IS SO ORDERED.**

_____
/s/
Mark S. Davis
United States District Judge

September  5  , 2012
Norfolk, Virginia